# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT LOUISVILLE

## CIVIL ACTION NO. 3:13-CV-391-JDM

JAIME M. SMITH                                                                PLAINTIFF

V.

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY            DEFENDANT

## **MEMORANDUM OPINION**

The plaintiff, Jaime Smith, filed this action pursuant to 42 U.S.C. §405(g), seeking judicial review of an administrative decision of the Commissioner of Social Security, who denied her applications for disability insurance and supplemental security income benefits. Ms. Smith asserts that the administrative law judge's findings were not supported by substantial evidence and must be overturned. After reviewing the parties' fact and law summaries and the administrative record, the court finds that Ms. Smith's arguments are not persuasive. The court will affirm the decision of the Commissioner of Social Security.

## I.

Ms. Smith applied for disability insurance and supplemental security income benefits in October 2006, alleging she became disabled in April 2005 due to her cerebral palsy and its attendant complications (gait disturbance, learning disabilities, and inability to multi-task). After her applications were denied initially and on reconsideration, Ms. Smith filed a request for a hearing before an administrative law judge ("ALJ"). The ALJ conducted a hearing and then, in April 2009, issued a decision unfavorable to Ms. Smith in which he determined, without any explanation why, that none of her impairments met or equaled a Listed Impairment. He further

determined that Ms. Smith retained the residual functional capacity to perform a limited range of sedentary work. Based on the testimony of a vocational expert who stated that there existed an adequate number of such jobs in the national and local economies, the ALJ concluded that Ms. Smith was not disabled as a matter of law.

Ms. Smith timely appealed the ALJ's decision to the Appeals Council, which affirmed the decision of the ALJ. She then timely appealed to the district court, which determined that the ALJ erred as a matter of law by performing such a cursory analysis of whether Ms. Smith's impairments met or equaled in severity any of the Listed Impairments. The court then entered an order remanding the matter to the Commissioner for an adequate evaluation of whether Ms. Smith's cerebral palsy met or equaled the medical criteria of Listing 11.07.

In March 2012, a different ALJ conducted an administrative hearing at which Ms. Smith, a vocational expert, and a medical expert testified. Ten days later, the new ALJ issued his opinion in which he determined that Ms. Smith's cerebral palsy did not meet or equal in severity Listing 11.07. The ALJ also determined that Ms. Smith was limited to no more than sedentary work, but he added additional non-exertional limitations not included by the first ALJ. Ms. Smith timely appealed that decision to the Appeals Council and then to this court.

## II.

In reaching a determination regarding a claimant's disability, an ALJ is required to perform a five-step sequential evaluation process. If the ALJ is able to find that a claimant either is or is not disabled at a particular step, she must not go on to the next step. The five steps are as follows:

(1) At the first step, the ALJ consider the claimant's work activity, if any. If the claimant is engaged in substantial gainful activity, she is not disabled.

2

(2) At the second step, the ALJ consider the medical severity of the claimant's impairments. If there exists no severe medically determinable physical or mental impairment (or combination of impairments) that meets the duration requirement, the claimant is not disabled.

(3) At the third step, the ALJ also considers the medical severity of the claimant's impairments. If the claimant has an impairment that meets or equals one listed in 20 C.F.R. Pt. 404, Subpt. P, App 1, and meets the duration requirement, the ALJ must find that the claimant is disabled and no further evaluation is necessary.

Before the ALJ goes from step three to step four, she must assess the claimant's residual functional capacity, which the ALJ then must use at both step four and step five when evaluating the claimant's alleged disability.

(4) At the fourth step, the ALJ must consider her assessment of the claimant's residual functional capacity and her past relevant work. If the claimant can still do her past relevant work, the ALJ must find that she is not disabled.

(5) At the fifth and last step, the ALJ must consider her assessment of the claimant's residual functional capacity and her age, education, and work experience to see if the claimant can make an adjustment to other work. A claimant who can make an adjustment to other work is not disabled, but one who cannot is disabled.

*See* 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).

In this appeal, Ms. Smith asserts that the ALJ's most recent decision, like the first, does not contain an accurate, legally-appropriate analysis of whether her cerebral palsy meets or equals a Listed Impairment. She also asserts that the ALJ improperly failed to include any limitations due to her lower back pain and fatigue when he assessed her residual functional capacity. She asks this court to remand the matter with instructions that the Commissioner award benefits, rather than afford the Commissioner a third opportunity to evaluate the record.

**III.**

This court must affirm the conclusions of the Commissioner of Social Security unless the administrative law judge failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. §405(g). "Substantial evidence" as

3

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and the reviewing court must affirm if substantial evidence exists, even if it would have reached a different conclusion. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008)(citing *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). That being said, the concept of "substantial evidence" cannot be satisfied by a highly selective reading of the administrative record, it must be supported by the record "taken as a whole." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Id*. at 388 (internal quotes and citations omitted).

Ms. Smith argues that the ALJ who reconsidered the case made two general errors: he improperly evaluated whether her cerebral palsy met or equaled in severity Listed Impairment 11.07, and he failed to include all of her functional limitations in his assessment of her residual functional capacity. The court will consider each argument in turn.

### A. Whether the ALJ Properly Evaluated whether Ms. Smith's Cerebral Palsy Met or Equaled in Severity the Diagnostic Criteria of Listing 11.07.

Appendix 1 to 20 C.F.R. Part 404, Subpart P contains a listing of various types of impairments and the diagnostic criteria necessary to establish that a person with one of those impairments is sufficiently afflicted to be deemed disabled as a matter of law without further inquiry. One of the Listed Impairments is cerebral palsy. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.07, which states, in its entirety:

> 11.07 *Cerebral palsy*. With:
>
>     A. IQ of 70 or less;
>     B. Abnormal behavior patterns, such as destructiveness or emotional instability; or
>     C. Significant interference in communications due to speech, hearing, or visual defect; or
>     D. Disorganization of motor function as described in 11.04B.

The ALJ concluded correctly, and Ms. Smith does not dispute these conclusions, that there exists no evidence that Ms. Smith meets the diagnostic criteria for subsections A through C. The dispute is whether the ALJ's conclusion that she does not meet the criteria for subsection D was supported by the evidence.

Ms. Smith presents two questions for this court: whether a lynchpin of the ALJ's conclusion that Ms. Smith did not meet the diagnostic criteria of Listing 11.07(D) is her ability to ambulate without an assistive device, and whether the ALJ improperly considered her activities of daily living in his analysis, which she asserts must be based on medical evidence alone. The court agrees, in part.

In his opinion, the ALJ stated:

> *The medical expert at the hearing, Dr. Alan Fischer, testified that* the claimant has been diagnosed with cerebral palsy with a gait disturbance as well as a history of back pain. However, he further testified that the claimant's conditions do not meet or equal listing 11.07. Specifically, he stated that while the medical evidence of record shows a gait disturbance, *her difficulty walking, even with the use of one cane occasionally, is not significant enough as to satisfy the criteria of listing 11.07. By example, he noted that if the claimant had to use two canes, a walker, or a wheelchair, this would satisfy the listing. ...* He noted that the evidence does not reflect a limitation in the use of her hands and fingers. He testified that the evidence supports that her condition has resulted in a leg abnormality that led to an abnormal gait and difficulty with balance, and because of this she could not sustain being on her feet throughout a workweek.
>
> … [In the ALJ's opinion] the claimant's condition does not result in disorganization of motor function with significant and persistent disorganization of motor function in two extremities, result in sustained disturbance of gross and dexterous movement, or gait and station. She had a history of ankle cord length lengthening and the breaking and straightening of her femur bones as her knees had turned in. She continues to complain of easy tiring, increasing weakness in her extremities, difficulty standing or sitting for long periods, tripping and falling when walking, lower back pain radiating into her right leg, and an inability to carry heavy objects or squat. On examination, she had problems with gait and imbalance, mildly decreased strength in her lower extremities, hyperreflexive patellar reflexes bilaterally, and downgoing

5

> Babisnki's bilaterally. She had normal vibration, sensation, grip strength, and fine finger movement. She had internal rotation of the right lower extremity with a noticeable limp. She ambulated without the use of an assistive device. She transferred to and from the examining table with some visible balance problems. She has decreased hip and lumbar range of motion. *The examiner felt that she might benefit from an assistive device due to unsteady gait; however, she had not used one.* On follow up in December 2011, examination was normal, except for increased reflexes and wide-based gait. *Despite some noted difficulties, she was able to attended [sic] college courses, work part time and perform some household chores.* The only clinical examinations in the record are from August 2006, February 2007, and December 2011. While she does have some limitations in this area, the evidence does not support that these are significant and sustained (Exhibits 1F [Neuropsychological Evaluation] & 5F [Consultative Physical Examination]). *The finding that the claimant's condition does not meet or equal the criteria of this section of the listing is consistent with the opinion of the medical expert at the hearing.*[1]

The court must now determine whether this analysis properly interpreted the requirements of Listing 11.07D and whether it was based on appropriate evidence.[2]

### 1. The Diagnostic Criteria of Listing 11.07D

The diagnostic requirements for Listing 11.07D consist of a chain of regulatory cross references from 11.07D to 11.04B to 11.00C. The diagnostic criterion specified in 11.07D states only: "Disorganization of motor function described in 11.04B." 11.04B thus contains the criteria for the requisite severity of the disorganization, and it states: "Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C)." 11.00C provides no definition of the term "significant," but defines "persistent" as a disorganization of motor function that manifests "in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and

---

[1] Admin. R. at 306-7 (emphasis added).
[2] Ms. Smith also asserts that the ALJ erred in his analysis at step three by relying on the testimony of the medical expert for an additional reason. The medical expert testified that he did not feel comfortable commenting on the psychological aspects of Ms. Smith's evaluation, because that was not his specialty and he was not familiar with some of the tests performed by the psychological consultative examiner. The court need not address the merits of this assertion, however, since Ms. Smith's argument is that she satisfies the Listing 11.07D, for which there is no psychological component to the diagnostic criteria.

6

sensory disturbances" that occur singly or in various combinations," and notes "*[t]he assessment of impairment depends on the degree of interference with locomotion* and/or interference with the use of fingers, hands, and arms." This seems to indicate that a claimant's need for assistive devices is an appropriate consideration, but, as the Sixth Circuit stated in *Gambill v. Bowen*:

> § 11.00C is part of the introductory section on neurological disorders, not a part of the listings. Unlike § 11.04B, § 11.00C is not specifically incorporated into the [relevant] listing. Instead, it is mentioned only parenthetically, and does not appear to do more than elaborate on the possible manifestations of "persistent disorganization of motor function," the term used in § 11.04B to establish the level of severity required for a finding of disability.

823 F.2d 1009, 1012-13 (6th Cir. 1987). Regardless, nowhere in the regulations is any statement that the diagnostic criteria of "significant and persistent disorganization of motor function" means, at a minimum, that the claimant must need to use an assistive device, such as a cane, walker, or wheelchair, in order to ambulate.

The question for this court, then, is whether the ALJ's analysis is properly interpreted as deeming the use of certain assistive devices a necessary diagnostic element of Listing 11.07D, or one of several factors to be considered in their totality. The court concludes that the latter interpretation is correct. Although the testimony of the medical expert can fairly be interpreted as stating that the use of an assistive device is a necessary part of the diagnostic criteria, and although the ALJ stated that his analysis was consistent with the expert's opinion, Ms. Smith's ability to walk without any assistive device, was but one of many factors the ALJ named and discussed as part of his analysis of whether she suffers from "disorganization of motor function with significant and persistent disorganization of motor function in two extremities, [that] result[s] in sustained disturbance of gross and dexterous movement, or gait and station." Had the ALJ considered the use of an assistive device determinative, he could have limited his discussion of the medical evidence solely to those portions in which doctors commented on her ability to

7

walk on her own. He did not. Instead, he discussed several medical records describing the medical reasons for her impairment of gross motor function in her legs, and the relative demonstrable severity of each. Accordingly, the court concludes that the ALJ did not err in interpretation of the diagnostic criteria of Listing 11.07D.

### 2. Ms. Smith's Activities of Daily Living

Ms. Smith also asserts that the ALJ improperly considered her activities of daily living in his analysis of whether she satisfied the diagnostic criteria of Listing 11.07D. She asserts this determination must be based on medical evidence alone, but cites no regulation or case in support of her argument. The Commissioner concedes that whether a claimant satisfies the criteria for a particular listing is primarily a medical determination, but argues that consideration of a claimant's degree adaptive functioning is not precluded, as evidenced by the mental retardation listing, *see* 20 C.F.R. pt. 404, subpart P, app. 1, Listing 12.05. The court finds the Commissioner's argument persuasive, but also notes that the ALJ's discussion of Ms. Smith's ability to attend classes and perform household chores is, in context, only a passing remark, not fundamental evidentiary support.

### B. Whether the ALJ Appropriately Evaluated Ms. Smith's Residual Functional Capacity.

Ms. Smith's other principal argument is that the ALJ failed to discuss all relevant evidence of Ms. Smith's residual functional capacity, and incorporate all established limitations in his assessment. In his opinion, the ALJ determined that Ms. Smith has the residual functional capacity to perform sedentary work, except she can:

1. Never climb ladders, ropes, and scaffolds;
2. Occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs;
3. Must avoid exposure to hazards;
4. Must avoid concentrated exposure to vibration;
5. Can only perform simple, routine job duties and instructions;

8

6. Can only have work-related contact with supervisors and coworkers;
7. Cannot have any contact with the general public;
8. Cannot perform fast paced work; and
9. Cannot perform work on uneven surfaces.

Ms. Smith argues that those limitations should have included an accommodation for her lower back pain, which causes her to tire easily, and for her inability to "multitask or keep up the pace of a desk job."[3] The court disagrees, because the limitations do include accommodations for those problems.

To begin with, the ALJ limited Ms. Smith to sedentary work, which contains an inherent limitation on the degree to which she is capable of physical exertion during the work day, and thereby incorporates his analysis of the evidence of her tendency to tire easily. And, contrary to Ms. Smith's assertion, the ALJ clearly states that she "cannot perform fast-paced work" in his assessment of her residual functional capacity.

As for Ms. Smith's argument that the ALJ relied too heavily on her ability to attend college and her prior part-time employment to discount the severity of her functional limitations, it has some inherent appeal. As Judge Richard Posner of the Seventh Circuit Court of Appeals recently observed:

> The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons … and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

*Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). The court does not disagree with Judge Posner's analysis, but those comments were dicta, and the opinion has no precedential value to this court in the Sixth Circuit. More importantly, however, the ALJ's remark about Ms. Smith's

---
[3] Pl.'s Fact and Law Summ. at 7.

ability to attend college, work, and perform some chores were made in the larger context of his comparison of the medical evidence of record (which included treatment records and expert opinions) to her claimed limitations. When read in context, it is clear that the ALJ's remark about Ms. Smith's activities was not solely, or even principally, determinative of his ultimate conclusions. Accordingly, his analysis was supported by substantial evidence and there exists no basis to set the Commissioner's decision aside.

## IV.

The ALJ's analysis of whether Ms. Smith's cerebral palsy meets or equals in severity the diagnostic criteria of Listed Impairment 11.07, and his determination of her residual functional capacity, are supported by substantial evidence and cannot be set aside under 42 U.S.C. § 405(g). The court will therefore enter an order affirming the decision of the Commissioner of Social Security.

DATE:

cc: counsel of record